UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

**FILED**

MAR - 6 2015 DB

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

CRAIG CUNNINGHAM, Pro-se )
)
*Plaintiff* )
) CIVIL ACTION NO.: 3:15-cv-
v. )
)

Peak Legal advocates, Debt Pay Gateway, Inc
Susan Lafferty, Christopher Queen, SRH Ventures, Inc., Lafferty Law Firm, PC
Richard Nodelman, Michael Williams, Henry Waters, Brian Grossman, James Crosby

*Defendants.*

### Plaintiff's Original complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Upon information and belief, Peak Legal advocates is a California business operating from 10008 National Blvd ste 200, Los Angeles, CA 90034.

3. Debt Pay Gateway Inc., is a California Corporation operating from 120 Birmingham Dr ste 120F, Cardiff, CA 92007 and the registered agent and manager is Christopher Queen at the same address.

4. SRH Ventures Inc., is a Florida corporation operating from 6996 Piazza Grande Ave, ste 304 Orlando, FL 32835 with a registered agent Richard Nodelman who can be served at the same address.

5. Richard Nodelman is a natural person and office of SRH ventures with an address of 6996 Piazza Grande Ave, ste 304 Orlando Fl 32835.

6. Michael Williams is a natural person and officer of SRH ventures and can be

served at 6996 Piazza Grande Ave ste 304, Orlando, FL 32835

7. Henry Waters is a natural person and officer of SRH Ventures Inc., and can be served at 9612 BelleChase Road, Granbury, TX 76049.

8. Susan Lafferty is a natural person and a lawyer and can be served at 4525 Harding road, ste 200, Nashville, TN 37205.

9. Lafferty Law Firm, Inc is a professional corporation with a registered agent Susan Lafferty and is operating from 2129 Crystal Dr., Nashville, TN 37210.

10. James Crosby is a natural person and apparently a manager with SRH ventures. He can be served at 6996 Piazza Grande Ave, ste 304, Orlando, FL 32835.

11. Brian Grossman is a lawyer operating from 707 Idaho Ave # 201, Santa Monica, CA 90403 and is the owner of Peak Legal Advocates.

### Jurisdiction

12. Jurisdiction of this court arises as the acts happened in this county.

13. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here. Personal jurisdiction is apparent as the defendants are conducting regular calls to solicit people in Nashville to sign up for their debt relief and legal services to include spoofing a local Nashville number.

### FACTUAL ALLEGATIONS

14. In 2015, the Plaintiff received an automated call with a pre-recorded message from "Rachel with Card Services", which is synonymous with fraud. The Plaintiff has received multiple other calls from similar "Rachel with card services" scammers who try to obtain consumer's credit card numbers using the lure of

being able to lower their credit card rates. These calls frequently come from overseas locations and use spoofed numbers, which makes them very difficult to track down or identify, which is naturally the point of these concealment activities. This call was a bit different, as they used a local number, obviously targeting Nashville area residents on behalf of Susan Lafferty in an attempt to drive traffic and business to her for legal services.

15. The overseas caller spoke with the Plaintiff about how he could lower his credit card rates and set an appointment for 10AM the next day. The Plaintiff tried to call the number back, but it was a person's actual cell phone that was not associated with any of the defendants and thus was clearly spoofed as nobody associated with the company answered.

16. The next day at 10AM, the Plaintiff was called by James Crosby who stated they were with a debt relief company and could help the Plaintiff lower his overall debt levels through their debt settlement program. In reality, he was calling on behalf of SRH ventures. When the Plaintiff asked Peak Legal about who called him, they stated it was SRH ventures in Florida and provided an address that corresponded with their corporate documents on record with the state of Florida website.

17. James stated that they could offer a monthly payment of $275 to join his 36 month program which would worse case result in the the Plaintiff paying only 40% or 40 cents on the dollar to settle his debt.

18. James stated that the program has FDCPA, (James called it the Federal Debt collection Protection act, but was obviously referring to the Fair Debt Collection Practices Act, 15 USC 1692) protection and that it costs credit card companies on

average $30-40,000 to sue a consumer and collect (This is completely false and litigation costs are a fraction of that typically), so the credit card companies typically would take a 40% settlement on the debt, worst case scenario.

19. James stated that collectors train their employees to violate the law and that the lawyers hired would keep a log of all FDCPA violations and then use the debt collectors own tactics against them to settle the Plaintiff's debts and that just last month in the company newsletter, a consumer had a $20,000 debt settled because their lawyer had documented $30,000 in violations. James stated that the Plaintiff would be able to sue for $1,000 per violation of the FDCPA.

20. James stated that if his debt could be forgiven completely, it would cost absolutely nothing at all. Although James stated that it was not very common that it happens, but there is a good chance that it could happen.

21. James stated that Susan Lafferty in Nashville, TN would be the lawyer representing the Plaintiff's and the program would be administered by Peak legal advocates.

22. Later that day, the Plaintiff was emailed a representation agreement for services offered by Peak Legal, Debt Pay Gateway, and Susan Lafferty as well as an attorney-client retainer for Susan Lafferty directly.

23. The Plaintiff notes that at no time has he hired Susan Lafferty or any of the defendants to represent him, nor has he ever been a client of Susan Lafferty or any of the Defendants, but these are the services offered in writing as a result of the robocall made on behalf of the defendants.

24. Interesting elements of the representation agreement include defining the services

as *"negotiating with creditors on behalf of the client for mutually acceptable repayment terms"*, *consistently setting aside funds in a dedicated account held by a third party payment processor which will be used to repay the program debt and to pay the attorney its fees.*

25. Additionally, the representation agreement said: *The client shall pay a service fee of 10% of the program debt, which shall be paid at the time the client makes the first payment to the client's creditors in connection with a settlement program. When the attorney obtains an offer in connection with the program debt and the client mkaes one payment towards the repayment program, the attorney's services will be deemed to be complete, the attorney have no further obligation with respect to the program debt account, the attorney shall be deemed to have earned the entire service fee and any unpaid service fee shall be withdrawn from the clients account and paid to the attorney.*

26. Even though the agreement disclaims any credit repair services, the call with James did include representations from James that seemed to indicate otherwise.

27. In the Attorney-client retainer agreement, it details even more fees and negotiates FDCPA damages for an account in 100% good standing with an original creditor. In addition to the other fees, there is a non-contingent fee of $200 per month for the first 14 months or $2800 and $49/month for the full 36 months or $1764. Plus the 10% fee of the Plaintiff's presumed debt of $13,000 or $1300. In total, for the Plaintiff's proposed scenario, the Plaintiff would incur $6328 in total attorney's fees, should the program be carried out the full term. not including the $9.75 monthly fee from debt pay gateway for holding the Plaintiff's money in a savings

account.

28. This plan seems ill conceived and mathematically challenged from the start. Even with a "worst case" 40% savings, the proposed plan would not have enough funds to pay both the attorney's fess and the 40% settlement. Over 36 months, under the plan, there would be $9900 in funds saved, while the 40% settlement would leave only $5940 remaining to pay incurred legal fees of $6328.

29. It is even more troubling that the agents of Peak Legal made representations that border on legal malpractice, for example suggesting that under the FDCPA (FAIR debt collection practices act, not Federal Debt collection protection act as stated) that there is a $1,000 per violation recovery, when it is at most $1,000 per defendant, but generally ruled by most courts to be $1,000 per action or lawsuit and they are using these misrepresentations to create a false expectation in the mind of an unwitting consumer, for example claiming a documented $30,000 in FDCPA violations being used as leverage to gain forgiveness of a $20,000 debt.

30. Under the described scenario, the lawyer could document 100 FDCPA violations and it would be at most $1,000 in statutory damages, although actual damages could certainly exceed that.

31. As a champion of consumer rights and no stranger to FDCPA litigation, with the occasional accusation of being overzealous in my application of it, it is troubling to the Plaintiff that these people are selling consumers on the concept of intentionally defaulting on a 100% current account in the hopes of documenting FDCPA violations to gain leverage to settle the debts, particularly while billing over $6,000 for the "services." If the consumer gets sued by the creditor after

following their advice, the defendants have made it clear they will not represent the consumer at all.

32. It seems unethical to the Plaintiff that there are negotiations about FDCPA violations that have not even occurred while an account is still current and up to date with an original creditor, particularly for a lawyer like Susan Lafferty that has exactly zero FDCPA lawsuit experience at least as documented in Federal court on PACER.

33. Susan Lafferty is a lawyer in Nashville, TN who is a licensed attorney and owner of Lafferty Law PC and has a website of laffertylawonline.com. James stated that Susan would be in charge of all the legal negotiations on behalf of the Plaintiff.

34. The Plaintiff had a consultation with Susan Lafferty, and she confirmed that she was well aware of Peak Legal services, she knew about the debt reduction program they offered and would take an active role in negotiating the Plaintiff's debts on his behalf with Chase. She also confirmed that he strategy would be to default on the credit card debt while paying funds into a trust account, which would ultimately be used to pay her.

35. She recommended to the Plaintiff that he stop paying his credit card and start paying into the trust account for future negotiations through her services.

36. Peak Legal Advocates is a law firm and attorney referral network that currently has ads offering lawyers part time legal work for affiliate lawyers from New Hampshire to Hawaii. Peak legal represents that they are a debt restructuring firm and they will provide client flow to an affiliate attorney's practice. Peak legal states their practice is founded upon the FDCPA and will train affiliate attorneys

to successfully represent consumers in this expanding area of the law and provide a healthy flow of clients to your area.

37. According to several representatives of Peak legal, Brian Grossman is the lawyer that owns/operates Peak Legal Advocates and is the driving force behind these calls. Additionally Peak Legal Advocates apparently drafted all the legal contracts and sent them to the Plaintiff for signature on behalf of Susan Lafferty.

38. James further explained that the Plaintiff's program payments would go to a "trust" account or savings account administered by Debt Pay Gateway Inc.

39. All of the defendants are vicariously liable for the calls made on their behalf and for the solicitations of their services in this case. The officers of the respective corporations are also liable for the actions of their entities and had full knowledge and participation in the services and marketing of the calls.

40. James also verified with the Plaintiff that he was currently on time with all payments before proposing the program to the Plaintiff and monthly fee.

41. James stated that he has signed quite a few clients to Susan Lafferty and that she has quite a good success rate with the clients he has assigned to her.

42. The Plaintiff has not given any authorization to be called with a pre-recorded message or automated calls to his cell phone. The calls were not related to any emergency purpose, either.

43. Th pre-recorded message did not list the name, address, or phone number of the entity calling and in fact spoofed the real number of a consumer that has nothing to do with any of the defendants. This is an attempt to conceal the true name and identity of the parties responsible for the calls.

44. The Defendants violated 47 USC 227(b) by placing automated calls to the Plaintiff's cell phone using a pre-recorded message.

45. The Defendants also violated the Plaintiff's rights under 47 USC 228(c) as codified as 47 CFR 64.1200(d) for placing calls with pre-recorded messages that did not state the name, address, or phone number of the entity placing the calls or on whose behalf the calls were made. This entitles the Plaintiff to an additional $1,500 per call.

## CAUSES OF ACTION:

### COUNT I

**Violations of the Telephone Consumer Protection Act (TCPA)**

46. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

47. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited and unwelcome telephone calls to the Plaintiff's cell phone. These phone calls also violated the TCPA by having an pre-recorded message that failed to contain the name, address, and phone number for the entity for which the calls are being place as required under the TCPA. These elements of the call violated 47 USC 227 (c) as codified by the FCC's CFR 64.1200(d).

### COUNT II

**Violations of the Telephone Consumer Protection Act (TCPA)**

48. Plaintiff Cunningham incorporates by reference all of the above paragraphs of

this complaint as though fully stated herein.

49. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing automated calls with pre-recorded messages to the Plaintiff's Cell phone. These elements of the call violate 47 USC 227 (b)(3)(a)

**PRAYER FOR DAMAGES AND RELIEFS**

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against Defendants

B. Statutory damages of $3000 for each phone call from each defendant.

C. Pre-judgment interest from the date of the phone calls.

D. Punitive damages for all claims in the amount of $30,000 from each defendant

E. Attorney's fees for bringing this action as incurred; and

F. Costs of bringing this action; and

G. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, tn 37211

828-291-7465
March 7th, 2015